

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.

CHRISTIAN M. ALLMENDINGER         Criminal No. 3:10cr248-01
ADLEY H. ABDULWAHAB            Criminal No. 3:10cr248-02

## MEMORANDUM OPINION

For the reasons set forth below, Defendant Abdulwahab's MOTION TO SEVER DEFENDANT ABDULWAHAB (Docket No. 51) and Defendant Allmendinger's related MOTION TO SEVER DEFENDANTS CHRISTIAN ALLMENDINGER FROM ADLEY ABDULWAHAB (Docket No. 58) (collectively, "Defendants' severance motions" or "the motions") will be GRANTED.

### BACKGROUND

On February 1, 2011, the United States unsealed a Superseding Indictment (SI) (Docket No. 140) charging Allmendinger and Abdulwahab with Conspiracy to Commit Mail Fraud, Mail Fraud, Conspiracy to Commit Money Laundering, Money Laundering, and Securities Fraud. See generally SI. The central contention of both severance motions is that, if Allmendinger and Abdulwahab are tried jointly, as the United States intends, neither can receive a fair trial because their

respective defenses are antagonistic. That is, Allmendinger will maintain that the A&O Capital Management (A&O) investment entity that he co-founded in November 2004 was legitimate until he sold his interest in A&O in August 2007, at which time Abdulwahab steered the company in an illicit direction. On the other hand, Abdulwahab will maintain that Allmendinger, as a co-founder of A&O and thus someone who had control of the business from its inception until he sold his interest in August 2007, committed the alleged fraud before Abdulwahab's involvement with A&O and thus without Abdulwahab's knowledge. The inexorable corollary of these inconsistent theories of defense, according to the Defendants, will be that "[t]he jury will either be forced to accept one defendant's version of events over the other's—thereby requiring a conviction of at least one defendant—or interpret the conflicting defenses as conclusive evidence of a fraudulent scheme," thereby requiring a conviction of both. Allmendinger's Reply to Government's Opposition (Docket No. 104) at 3-4.

The severance motions both correctly point out that the language in the SI does much to confirm the presence of irreconcilably antagonistic defenses in this case. Paragraphs 33 through 36 of the SI allege:

> 33. In or about August 2007, motivated, in part, by their desire to avoid the increasing regulatory scrutiny of their individual involvement in the A&O investment offerings, ALLMENDINGER, ABDULWAHAB, and Oncale [another alleged coconspirator] decided to sell A&O.
> 34. Unbeknownst to ALLMENDINGER, ABDULWAHAB and Oncale enlisted the assistance of [an] attorney . . . , who had previously performed legal service for A&O, to create a sham sales transaction whereby A&O would be 'sold' to an offshore entity named Blue Dymond Capital Group, LLC, ("Blue Dymond") located in Nevis.
> 35. Blue Dymond was secretly owned and controlled by ABDULWAHAB and Oncale. The effect of the sham sales transaction was twofold. First, it allowed ABDULWAHAB and Oncale to eliminate ALLMENDINGER as their partner in A&O. Second, it allowed ABDULWAHAB and Oncale to limit their individual exposure to the ongoing regulatory scrutiny as they could claim that they no longer owned A&O.
> 36. On or about August 31, 2007, ALLMENDINGER, ABDULWAHAB, and Oncale signed the sale agreement in which they agreed to sell A&O to Blue Dymond.

SI ¶¶ 33-36. Those allegations, according to Allmendinger, actually articulate a key part of his defense that "A&O was operated lawfully during his tenure at the company, and that Mr. Abdulwahab defrauded him in the sale of his interest in A&O to remove him so that Mr. Abdulwahab and Mr. Oncale could operate the business unlawfully after [he] was no longer affiliated with the company." Allmendinger's Memorandum in Support (Docket No. 58) at 4. Abdulwahab does not address the impact of the above language with comparable specificity, but he insists that it

3

"puts the parties in opposition to each other," such that each defendant will face dual prosecutions—one from the United States and a second from his codefendant. Abdulwahab's Motion to Sever (Docket No. 51) at 1.

The United States counters that severance is not appropriate in this case. First, it characterizes the claimed defenses as too speculative to support severance. "It is entirely unclear at this point," opines the United States, "that 'Mr. Allmendinger's defense will contradict Mr. Abdulwahab's.'" Government's Memorandum in Opposition (Docket No. 85) at 6 (quoting Allmendinger's Memorandum in Support at 9). Second, the United States insists that, even if the speculative nature of the defenses did not preclude severance, the defenses, even if antagonistic, fall short of being so irreconcilable as to justify severance. As to the Defendants' accusations against one another, the United States dismisses them as examples of joint defendants "point[ing] the finger at each other to deflect guilt from themselves or . . . attempt[ing] to lessen the importance of their role," features "inherent in most multi-defendant trials." Government's Memorandum in Opposition at 7 (internal quotation marks omitted).

## DISCUSSION

Assuming proper joinder of defendants in an indictment under Fed. R. Crim. P. 8(b), it is settled in the Fourth Circuit that, "[b]arring special circumstances, individuals indicted together should be tried together." United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981); see also Richardson v. Marsh, 481 U.S. 200, 206-11 (1987); United States v. Samuels, 970 F.2d 1312, 1314 (4th Cir. 1992). This presumption is particularly powerful in conspiracy cases with multiple defendants. United States v. Davis, 2008 WL 724036 (4th Cir. Mar. 17, 2008) ([T]he joint trial 'presumption is especially strong in conspiracy cases.'" (quoting United States v. Harris, 498 F.3d 278, 291 (4th Cir. 2007))).

In Zafiro v. United States, 506 U.S. 534, 537-38 (1993), the Supreme Court articulated the "special circumstances" in which severance is proper under Fed. R. Crim. P. 14.[1] It wrote, "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

---

[1] Rule 14 states in relevant part: "If the joinder of . . . defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

5

Zafiro, 506 U.S. at 539. The Court, in particular, recognized that there may be some cases where codefendants' defenses are so antagonistic as to be prejudicial to one defendant or both, thus counseling for severance under Rule 14. Id. at 538 (citing, among other cases, United States v. Benton, 852 F.2d 1456 (6th Cir. 1988); United States v. Smith, 788 F.2d 663 (10th Cir. 1986); United States v. Berkowitz, 662 F.2d 1127 (5th Cir. 1981)). Echoing Rule 14's language, Zafiro left "the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." 506 U.S. at 541.

The Fourth Circuit since has made clear that the mere presence of conflicting defenses, without more, does not require severance. See, e.g., United States v. Najjar, 300 F.3d 466, 474 (4th Cir. 2002) ("[Severance] requires more than finger pointing. There must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." (internal citations and quotation marks omitted)); United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986) ("The mere presence of hostility among defendants . . . or the desire of one to exculpate himself by inculpating another [are] insufficient

6

grounds to require separate trials" (internal quotations committed)). Also, "speculative allegations" do not support severing defendants. Najjar, 300 F.3d at 473.

The unique facts of this case, coupled with allegations in the SI which manifestly place Allmendinger and Abdulwahab in stark opposition to one another, make severance appropriate under Zafiro. First, and contrary to the assertions of the United States, the Defendants' proffered defenses are not speculative in nature. At oral argument, counsel for Allmendinger disclosed that his theory of defense was that there was no fraud committed while Allmendinger ran the company from 2004 until he sold his interest in August 2007. He intends to show that, after Abdulwahab bought into A&O in November 2006, Abdulwahab began making preparations to defraud the investors and, to that end, Abdulwahab defrauded Allmendinger by having Allmendinger sell his interest in A&O to a sham company owned by Abdulwahab, the fact of that ownership being unknown to Allmendinger. It was, says Allmendinger, only after he sold his interest in A&O that Abdulwahab was able to effect the frauds that are charged in the SI. And, Abdulwahab intends to defend on the theory that the frauds were committed by Allmendinger before Abdulwahab bought into A&O in November 2006.

Quite clearly, these theories of defense are antagonistic. And, indeed, they are quite difficult, if not impossible, to

reconcile. Counsel for Allmendinger made clear that he intended to pursue the attack on Abdulwahab in opening statement and closing argument and during cross-examination of the United States' witnesses, and perhaps through the presentation of witnesses in the defense case. Counsel for Abdulwahab forecasted a similar approach.

And, given the allegations in the SI, the Court has little doubt that the Defendants would be able to pursue this strategy vigorously. The SI alleges that Allmendinger became involved in the day-to-day operations of A&O as early as November 2004, upon co-founding A&O. SI ¶ 13. As to Abdulwahab, the SI alleges, however, that although his company provided marketing services for A&O, he did not buy a stake in A&O until at least November 2006. Id. ¶ 22. The timeline, as alleged, facilitates Adbulwahab's defense that the criminal acts charged in the SI, to the extent that they occurred, predated his involvement in A&O.[2] Furthermore, the SI alleges (without issuing criminal charges therefrom) that Abdulwahab defrauded Allmendinger out of his interest in A&O by duping Allmendinger into selling his A&O

---

[2] The SI clearly alleges that, after Abdulwahab engineered Allmendinger's exit in August 2007, he and others, with Allmendinger's knowledge, continued the fraud started under Allmendinger's management of A&O. Of course, Abdulwahab is not bound to accept that view of matters in framing his defense. And, whether the defense will succeed is not to be decided now. What is at issue is whether, in a joint trial, he can fairly present the defense.

interest to a sham business, Blue Dymond, secretly controlled by Abdulwahab. Id. ¶¶ 33-36. That alleged conduct on the part of Abdulwahab, albeit uncharged, facilitates Allmendinger's defense that he ran a legitimate operation with A&O up until the time of Abdulwahab's involvement in the business, and it further facilitates his related defense that Abdulwahab's fraudulent sale of A&O in August 2007 was an attempt by Abdulwahab to rid A&O of his honest services. The Court is cognizant of the general rule that speculative defenses do not warrant severance, but, far from being speculative, the antagonistic defenses forecasted here are largely pled in the SI. They cannot fairly be described as speculative.

Second, and as one can glean from the preceding discussion, the substantive irreconcilability of the defenses raises the specter of an unreliable jury verdict, an outcome against which Zafiro directed district courts to guard. Given the allegations of the SI, it is not difficult to accept that both the prosecutor and counsel for Allmendinger will be vigorously attacking Abdulwahab throughout the trial and that the prosecutor and counsel for Abdulwahab likewise will be attacking Allmendinger from opening statement through closing argument.[3]

---

[3] The briefs also reflect that there is considerable personal animosity between the Defendants and that Abdulwahab actually assaulted Allmendinger during a dispute over the operation of A&O.

9

The evidence that Abdulwahab defrauded Allmendinger is part of the prosecution's case against Abdulwahab. And, it also is important to Allmendinger's contention that he was not engaged in substantive fraud and to his claim that he withdrew from the conspiracy. If believed, the defense that there was no fraud before the sale of his interest in August 2007 could produce an acquittal. Hence, evidence of Abdulwahab's fraud against Allmendinger is critical to his defense. And, of course, it is very damaging to Abdulwahab.

The prosecution argues that the issues created by the evidence of the uncharged misconduct can be solved by limiting instructions. And, as a general proposition, that is a correct view. However, given the emphasis that both the prosecution and Allmendinger will place on that uncharged misconduct, it is difficult to fashion a limiting instruction that will allow the prosecution to use the evidence against Abdulwahab; will afford Abdulwahab the protection to which he is entitled when that evidence is so used; and, at the same time, will allow Allmendinger to use the uncharged conduct of Abdulwahab effectively in his defense.

Of course, juries are presumed to follow limiting instructions, but, to be effective, such instructions must be very clear in describing the limits they impose. On the facts alleged in the SI, there is a real risk that the imposition of

limits that will protect Abdulwahab could undermine Allmendinger's defense. And, a limit that will allow Allmendinger effectively to use Abdulwahab's uncharged conduct might diminish the protection to which Abdulwahab is entitled when the prosecution uses the evidence as part of the context of the charged offenses or as permissibly considered uncharged misconduct.

Wholly apart from that problem, it must be remembered that Allmendinger and Abdulwahab intend to attack each other aggressively and comprehensively. Thus, throughout the trial each defendant will be fending off thrusts from the prosecution and from the other defendant. And, in the end, the jury will be called upon by each defendant to accept his version of events. And, of course, it will be called upon by the prosecution to reject both versions of defense and to convict both defendants. Moreover, the underlying facts are complex, and it will be hard enough to understand and assess the complex evidence without also having to sort out the truth of the internecine warfare portended by the SI and the Defendants' counsel.

In <u>Zafiro</u>, the Supreme Court instructed that severance was appropriate where there was "a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro</u>, 506 U.S. at 539. The facts alleged in the SI and a realistic assessment of how the trial of

this case likely will proceed point to the existence of just such a serious risk. The remedy is to order the Defendants to be tried separately.

## CONCLUSION

For the reasons set forth above, Defendant Abdulwahab's MOTION TO SEVER DEFENDANT ABDULWAHAB (Docket No. 51) and Defendant Allmendinger's related MOTION TO SEVER DEFENDANTS CHRISTIAN ALLMENDINGER FROM ADLEY ABDULWAHAB (Docket No. 58) will be GRANTED.

It is so ORDERED.

/s/  REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 7, 2011